UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEXANDER EVANS,

             Plaintiff,

v.

AMAZON.COM, INC.,

             Defendant.

Case No. 24-CV-677-JPS

**ORDER**

1. **INTRODUCTION**

Plaintiff Alexander Evans ("Evans") alleges in this matter that Defendant Amazon.com, Inc. ("Amazon") invaded his privacy in violation of § 995.50 of the Wisconsin Statutes. ECF No. 1-1 at 7. Amazon filed an answer, ECF No. 5, and then a motion for judgment on the pleadings, seeking dismissal of Evans's invasion of privacy claim. ECF No. 12. The motion is fully briefed. ECF Nos. 13, 15,[1] 17. For the reasons stated herein, the motion will be granted.

---

[1] Evans filed his opposition brief three days late, on August 5, 2024, without seeking leave of court or making any attempt to explain or even acknowledge the tardiness. *See* July 1, 2024 text order ("Plaintiff's response is due twenty-one . . . days" after Amazon's opening brief); ECF No. 13 (filed July 12, 2024). Amazon invites the Court to disregard Evans's opposition brief entirely and to rule on the basis of its submissions alone. ECF No. 17 at 2 (citing *Weichman v. Clarke*, 2011 WL 666093, at *1 (E.D. Wis. 2011) (Stadtmueller, J.); *Losse v. City of Appleton*, 2019 WL 2142500, at *1 (E.D. Wis. 2019); and Civil L.R. 7(d)). In this instance, the Court will not fault Evans's attorneys for an oversight of a few days, but they are warned to take more careful note of deadlines set by federal and local rules in the future.

## 2.     LEGAL STANDARD

Once the pleadings are closed, a party may file a motion pursuant to Federal Rule of Civil Procedure 12(c) to challenge the sufficiency of the pleadings. These motions are evaluated under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (modifications omitted)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is one with "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556.

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). But the Court "need not accept as true 'legal conclusion[s, or t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quoting *R.J.R Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

3. **RELEVANT FACTS**[2]

In November 2021, Evans was working as a delivery driver for Amazon. Amazon had equipped its delivery van with electronic surveillance equipment. But Evans did not receive notice that Amazon equipped the van with electronic surveillance equipment, nor did he consent to the installation of this equipment nor to Amazon recording him while working.

While Evans was driving an Amazon delivery van one day in November 2021, the van was struck by a train. This event was recorded on video by the delivery van's surveillance equipment.[3]

---

[2]This summary of facts is largely drawn from the complaint, ECF No. 1-1 at 4–9, and citations to the complaint are omitted. Where the Court references material outside the pleadings, it includes a citation or explanatory footnote.

[3]As discussed below, Evans alleges that Amazon invaded his privacy by releasing the video to a tabloid news service. The video is publicly available on YouTube. *See* TMZ, *New Video of Amazon Van Split in Half by Train Seen from Inside*, YOUTUBE (Feb. 21, 2024), https://www.youtube.com/watch?v=0BcO7uvNbfM. The parties stipulated that the Court may consider the video in ruling on Amazon's motion "because it is incorporated by reference in [Evans's] complaint." ECF No. 9 at 2 n.1. The Court adopts that stipulation and has considered the content of the video for purposes of Amazon's motion. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690–91 (7th Cir. 2012) (explaining incorporation-by-reference doctrine and noting that "no court of appeals has ruled that the content of television programs and similar works may be incorporated by reference" but

The video depicts the event from inside the delivery van. It shows Evans driving the van on a public road[4] and eventually turning the van to cross a set of railroad tracks. A train suddenly enters the view and crashes into the delivery van, slicing off the entire back portion of the van just behind the driver's and passenger's seats. Evans, who was wearing a seatbelt, is momentarily jolted out of his seat. The airbags deploy and the rearview mirror is dislodged from its post. The train and then the surrounding outdoor area are visible through the large hole where the back of the van used to be. The rest of the train passes by while Evans looks forward. Evans then shakes his head. He does not appear to have any physical injuries. After a few seconds, he takes off his seatbelt and begins sorting through some items on the passenger seat.

Evans alleges that, in February 2024, Amazon released the video to TMZ, a tabloid news service, without Evans's knowledge or consent and knowing or having reason to know that TMZ would republish it.[5] He alleges that the release and subsequent publication of the video caused him emotional distress and embarrassment, and that he was subject to harassment, ridicule, unwanted inquiries, and further intrusion into his privacy as a result of the release and publication of the video.

---

commenting that "we think it makes eminently good sense to extend the doctrine to cover such works . . . .").

[4]Though Evans does not state in the complaint that he was driving on a public road, the parties do not dispute this fact. ECF No. 13 at 1; ECF No. 15 at 1.

[5]"Amazon contests that it authorized the release of the video . . . but acknowledges [that] this is a factual issue not fit for resolution at this stage . . . ." ECF No. 13 at 3 n.3 (citing ECF No. 5). The Court therefore accepts as true Evans's allegation that Amazon released the video to TMZ and knew or should have known that TMZ would publish it.

In its briefing, Amazon alleges that Evans made "repeated statements to the public before the video's publication" and provides links to two 2021 news pieces that both include an interview Evans gave. ECF No. 13 at 5 & n.5. Amazon also alleges that "there was significant national and international news coverage about [the] accident in 2021 . . . well before the video was allegedly released in 2024," linking to four examples from 2021 of such coverage. *Id.* at 7 & n.6. The Court addresses below whether these materials may be considered on a motion for judgment on the pleadings.

**4.     ANALYSIS**

To state a claim for invasion of privacy under Wisconsin law, Evans must sufficiently allege the following four elements:

(1) That Amazon intentionally disclosed facts regarding Evans in releasing the video to TMZ;

(2) That those facts pertained to Evans's private life;

(3) That publication of the video—making the private facts therein public—would be highly offensive to a reasonable person of ordinary sensibilities; and

(4) That Amazon acted either unreasonably or recklessly as to whether there was a legitimate public interest in the video or with actual knowledge that none existed.

Wis. Stat. § 995.50(2)(am)3; *Zinda v. La. Pac. Corp.*, 440 N.W.2d 548, 555 (Wis. 1989); ECF No. 14 (parties' joint jury instructions, citing Wis. Jury Instruction—Civil 2550 (2024) and *Zinda*, 440 N.W.2d at 555).

The first element is not at issue in the present motion. *See supra* note 5. With respect to the fourth element, at this stage, the parties only contest whether the video pertained to a matter of legitimate public interest. ECF

No. 13 at 6–7; ECF No. 15 at 5–7. The Court addresses each of the contested elements in turn and concludes that the allegations in the complaint are insufficient as a matter of law as to at least two of those elements.

### 4.1 Private Facts

With respect to the second element of Evans's invasion of privacy claim, that Amazon disclosed facts pertinent to his private life, "private facts" are those which a person "do[es] not expose to the public eye, but keep[s] entirely to [himself] or at most reveal[s] only to family or close personal friends." *Zinda*, 440 N.W.2d at 555. Evans is also "required to plead a reasonable expectation of privacy" in the setting where the alleged private facts arose. *Wis. State Senate v. City of Green Bay*, 719 F. Supp. 3d 869, 878 (E.D. Wis. 2024) (citing, with respect to Wis. Stat. § 995.50, *Bogie v. Rosenberg*, 705 F.3d 603, 609–10 (7th Cir. 2013); other citations omitted); *see also Bogie*, 705 F.3d at 610 (noting that the plaintiff "must have had a reasonable expectation of privacy either in the area itself or in the items in the area." (citing *K.H. Jane Doe v. Saftig*, No. 09-C-1176, 2011 WL 1792967, at *14 (E.D. Wis. May 11, 2011))).

Amazon argues that the video, which depicts him "in his work vehicle while driving on a public road and delivering packages for Amazon," does not reveal anything about Evans's private life and instead shows only events which occurred in a public setting where he had no reasonable expectation of privacy. ECF No. 13 at 3–5 (citing *Zinda*, 440 N.W.2d at 555; *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 271 (7th Cir. 1992); *Bogie*, 705 F.3d at 612; and *Trout v. Umatilla Cnty. Sch. Dist. UH3-Milton-Freewater (McLoughlin Union High Sch.)*, 712 P.2d 814, 817 (Or. App. 1985)); ECF No. 17 at 4 ("[Evans] cannot claim that he had some expectation of privacy against Amazon in [its] vehicle during work hours on a public

road." (citing *Wilson v. Northland Coll.*, 17-cv-337-slc, 2018 WL 341749, at *4 (W.D. Wis. 2018) and *Acosta v. Scott Lab. LLC*, 377 F. Supp. 2d 647, 652 (N.D. Ill. 2005)). Because Evans had no reasonable expectation of privacy—and because the complaint otherwise "fail[s] to identify anything [more] about his 'private life' that Amazon purportedly released"—Amazon argues that the invasion of privacy claim fails on this element. ECF No. 13 at 4–5.

Evans counter-argues that, in contrast to a "video . . . taken from outside the vehicle, a recording taken inside a vehicle is not necessarily public." ECF No. 15 at 3. He contends that Wisconsin law recognizes that he had a reasonable expectation of privacy in the interior of the van, both because it was a vehicle and because it was his workplace. *Id.* at 4 (citing *State v. Dixon*, 501 N.W.2d 442, 444 (Wis. 1993) and *Narducci v. Moore*, 572 F.3d 313, 321 (7th Cir. 2009)). He further points to his allegation that he did not have notice[6] that Amazon was recording the interior of the van as sufficient to show that he had a reasonable expectation of privacy therein. *Id.* (citing *Narducci*, 572 F.3d 313 and ECF No. 1-1 at 5).

The Court agrees with Amazon: as a matter of law, Evans did not have a reasonable expectation of privacy inside the delivery van. Evans correctly observes that he had a reasonable expectation of privacy against *state* intrusions while inside the vehicle. *Dixon*, 501 N.W.2d at 470 (holding

---

[6]Evans states in the complaint that he did not have *notice* that Amazon was recording him and that he did not consent to the recording. ECF No. 1-1 at 5. But he states in passing in his opposition brief that he was "unaware [that the video] was being taken." ECF No. 15 at 3 n.1. The distinction between notice of recording and awareness of recording is perhaps subtle, but not nonexistent. The Court relies on what Evans alleges in the complaint—that he was not put on notice of and did not consent to being recorded—and disregards his contention in the opposition brief that he was unaware of the recording, to the extent that it attempts to amend or add to the allegations in the complaint.

Page 7 of 19
Case 2:24-cv-00677-JPS    Filed 12/10/24    Page 7 of 19    Document 18

that, in the Fourth Amendment search-and-seizure context, a criminal defendant driving a vehicle borrowed with permission from another person had a reasonable expectation of privacy inside the vehicle). But the vehicular expectation of privacy noted in *Dixon* is not dispositive in the instant case, because as Evans acknowledges, the van was his workplace, and in the workplace, "[g]enerally, the expectation of privacy . . . is not as strong." *Acosta*, 377 F. Supp. at 650–51 (citing *O'Connor v. Ortega*, 480 U.S. 709 (1987); *Vega-Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174 (1st Cir. 1997); and *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991)).

"The Supreme Court has held that an employee's professed expectation of privacy must be assessed in the full context of the particular employment relationship." *Id.* at 651 (citing *O'Connor*, 480 U.S. 709); *see also Wis. State Senate*, 719 F. Supp. 3d at 878 ("Whether an expectation of privacy was reasonable is a fact-dependent inquiry and must be determined on a case-by-case basis." (citing *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007))). Although there can "be a right of privacy . . . in employer-owned equipment furnished to an employee for use in his place of employment," *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002), "[t]he operational realities of the workplace . . . may make *some* employees' expectations of privacy unreasonable." *O'Connor*, 480 U.S. at 717.

Evans cites *Narducci* for the general proposition that he "may" have had a reasonable expectation of privacy while in Amazon's van. ECF No. 15 at 4 (citing 572 F.3d 313). He relies heavily on his allegation that he "did not have notice that his actions in the vehicle were being recorded" as demonstrating that he reasonably expected privacy within the van. *Id.* at 4

(citing 572 F.3d at 318–21[7] and ECF No. 1-1 at 5). But he fails to cite any additional case law or make any more specific argument as to why, in the "full context of [his] particular employment relationship" and notwithstanding "the operational realities of [his] workplace," he had a reasonable expectation of privacy. *Acosta*, 377 F. Supp. 2d at 651; *O'Connor*, 480 U.S. at 717.

Even considering Evans's allegations that Amazon videorecorded him in the van without giving him notice or getting his consent, the Court cannot conclude that Evans had a reasonable expectation of privacy while working in the van. First, *Narducci* is of only questionable value to Evans's position. It is true that, in that case, the Seventh Circuit considered whether a government employee had notice (via "an audible beep at the beginning of every phone call") that his phone calls on work phone lines were being recorded in weighing whether he had a reasonable expectation of privacy during the calls. 572 F.3d at 319–20. But, in this Court's view, the *Narducci* court did not definitively hold that the notice factor, or any one factor, supported a finding that the employee had a reasonable expectation of privacy. But "[t]he existence of that beep, and what indication it gave to . . . employees about the privacy of their phone calls" was disputed, so viewing the facts in the light most favorable to the employee, as was required for purposes of summary judgment (i.e., assuming that the employee did *not* have notice that his phone calls were being recorded), the Seventh Circuit assumed that the employee "ha[d] demonstrated a reasonable expectation of privacy in his phone line at work." *Id.* at 320–21

---

[7]Evans does not provide pinpoint citations, but the Court believes that these are the portions of these cases to which he intended to refer.

("If the recording procedures were as obvious as [defendants] now claim that they were, then the jury may well conclude that Narducci did not have a subjective expectation of privacy in his phone line.").

Second and more importantly, the *Acosta* case, which Amazon cites, ECF No. 17 at 4, points to persuasive authority that undermines Evans's position. "Courts have consistently held that videotaping a work area or office in an attempt to monitor workplace conduct is not a violation of privacy." *Acosta*, 377 F. Supp. 2d at 651 (citing *Vega-Rodriguez*, 110 F.3d and *Thompson v. Johnson Cnty. Cmty. Coll.*, 930 F. Supp. 501 (D. Kan. 1996)); *see also United States v. Monreal-Rodriguez*, No. CR-18-02215-TUC-JAS (JR), 2021 WL 6932195, at *5 (D. Ariz. Sept. 10, 2021), *report and recommendation adopted*, No. CR-18-02215-001-TUC-JAS (JR), 2022 WL 130969 (D. Ariz. Jan. 14, 2022) ("[V]ideo surveillance does not in itself violate a reasonable expectation of privacy . . . [.]" (quoting *Taketa*, 923 F.2d at 677)).

This is true when employees receive "advance notice of the video surveillance." *Acosta*, 377 F. Supp. 2d at 651 (citing *Vega-Rodriguez*, 110 F.3d); *cf. Muick*, 280 F.3d at 743 (finding that employee did not have a reasonable expectation of privacy in employer-owned computer because employer policy permitted inspection of laptops). On the other hand, "covert video surveillance," however, of work areas in which "the level of privacy is inherently greater," such as a locker room, may violate reasonable expectations of privacy. *See Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1110 (C.D. Cal. 2006) (citing *Taketa*, 923 F.2d at 677), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008). However, even "[t]he use of hidden cameras"—or, differently stated, recording of which employees do not have notice and do not consent—"in an open office

setting does not automatically transform a non-private area into a private one." *Acosta*, 377 F. Supp. 2d at 651 (citing *Vega-Rodriguez,* 110 F.3d at 181).

Considering these persuasive authorities, the Court cannot conclude that Evans's alleged lack of notice of or consent to being recorded while working in his Amazon van necessarily means that he had a reasonable expectation of privacy therein, for purposes of his state-law invasion of privacy claim. Granted, an Amazon van is not an "open office setting," to use the example that the *Acosta* court employed. But it is more analogous to an open office than a work area, such as a locker room or bathroom, which carries an "inherently greater" expectation of privacy. *Trujillo*, 428 F. Supp. 2d at 1110. Evans drove the van on public roads, where at least some of his actions inside the van could have been observed by other drivers or pedestrians and captured by red light- or light pole-mounted surveillance cameras.[8] In other words, his actions inside the van were, at least to some extent, openly visible as if in an open office setting, and therefore not subject to a reasonable expectation of privacy. *See Monreal-Rodriguez*, 2021 WL 6932195, at *5 (noting that an individual does not have a "reasonable expectation of privacy that would preclude video surveillance of activities already visible to the public" (citing *United States v. Gonzalez*, 328 F.3d 543, 548 (9th Cir. 2003))); *cf. United States v. Kubasiak*, No. 18-CR-120, 2018 WL 6164346, at *1 (E.D. Wis. Aug. 23, 2018) ("[A] person does not have a

---

[8]*See United States v. House*, No. 23-1950, 2024 WL 4677017, at *1 (7th Cir. Nov. 5, 2024) (affirming that "the warrantless use of pole cameras to observe a home does not amount to a 'search' under the Fourth Amendment" (citing *United States v. Tuggle*, 4 F.4th 505, 511 (7th Cir. 2021))); *Tuggle*, 4 F.4th at 510 ("[A]s society's uptake of a new technology waxes—cars, GPS devices, cameras, and the Internet come to mind—expectations of privacy in those technologies wane.").

reasonable expectation of privacy in what he knowingly exposes to the public, even in his own home." (citing *California v. Ciraolo*, 476 U.S. 207, 213 (1986))).

Having concluded that Evans did not have an expectation of privacy in the van, the Court briefly addresses the other arguments that it discerns in the parties' briefing. Evans argues in passing that "the question is not whether [he] had a general expectation of privacy in the vehicle, but whether he had a reasonable expectation of privacy specifically from intrusions by the public at large." ECF No. 15 at 4 (citing *Bowers v. County of Taylor*, 598 F. Supp. 3d 719, 725 (W.D. Wis. 2022)). The Court does not understand the distinction that Evans is attempting to draw—his whole case is framed around *Amazon's* alleged invasion of his privacy, not the state's or the public's—but in any event *Bowers* does support his position. There, Judge Peterson stated that whether an expectation of privacy is reasonable is not a matter of "whether [an employee] had a general expectation of privacy in his Dropbox account" but rather a matter of "whether he had a reasonable expectation of privacy specifically from intrusions by his employer" in that account. *Bowers*, 598 F. Supp. 3d at 725 (citing *Mancusi v. DeForte*, 392 U.S. 364 (1968) for the proposition that an "employee may have [a] reasonable expectation of privacy from police, but not from a work supervisor"). This is consistent with the law as explained above: that an employee's privacy interests are generally lessened in the workplace context.

To the extent that Evans is arguing that disclosure of the video was unlawful because it led to revelation of inherently private facts about his life, *see* ECF No. 15 at 3 (referencing "the close-up video of Evans[] inside his work vehicle as he experienced a traumatic workplace injury"), the

Court cannot agree. For purposes of an invasion of privacy claim, "private facts" are those which a person "do[es] not expose to the public eye, but keep[s] entirely to [himself] or at most reveal[s] only to family or close personal friends." *Zinda*, 440 N.W.2d at 555. The Court readily acknowledges that experiencing the train crash must have been extremely jarring if not downright terrifying, but Evans has not presented authority establishing that his experience was inherently private as a matter of law. In any event, the significance of how the video documented Evans's experience is better analyzed through the lens of the second element of his invasion of privacy claim. *See infra* Section 4.2.

Amazon argues in passing that Evans's comments to news outlets after the train crash "demonstrate that he did not consider information about the accident to be private." ECF No. 13 at 5. It argues that this news coverage is subject to judicial notice "for the purpose of confirming that [Evans] has made such statements." *Id.* at n.5 (citing Fed. R. Evid. 201; *Kress v. United States*, 382 F. Supp. 3d 820, 830 (E.D. Wis. 2019), and *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 19-cv-874-slc, 2020 WL 12582894, at *2 (W.D. Wis. June 1, 2020)). Evans does not respond to the judicial notice aspect of Amazon's argument. *See* ECF No. 15 at 3 n.1. Because the Court determines that Evan's allegations vis-à-vis the first element of his invasion of privacy claim are insufficient as a matter of law because he did not have a reasonable expectation of privacy in the van, the Court has not considered the news coverage to which Amazon points and does not address whether it is properly subject to judicial notice or consideration on a motion for judgment on the pleadings.

### 4.2 Offensiveness

To sustain an invasion of privacy claim, the allegations in the complaint must show that the information disclosed about the plaintiff "would be highly offensive to a reasonable person of ordinary sensibilities" if published. *Zinda*, 440 N.W.2d at 555. Whether the disclosed information is "highly offensive" is "interpreted relative to the customs of the time and place, to the occupation of the plaintiff, and to the habits of neighbors and fellow citizens." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 652D, Comment on Clause (a) (Am. L. Inst. 1977)). "It is only when the publicity given is such that a reasonable person would feel justified in feeling seriously aggrieved by [the disclosure of the information] that a cause of action arises." *Id.* (citation omitted).

Amazon argues that Evans cannot meet this standard because "[t]he video is not graphic and merely shows [Evans] driving before the back end of his work vehicle was struck by a train, after which [he] appears uninjured." ECF No. 13 at 6. In Amazon's estimation, this is merely "[t]ruthful information about a car accident involving a delivery driver (an everyday occurrence)," showing Evans's "innocuous" or "benign" reaction to the accident. *Id.*; ECF No. 17 at 5.[9] It likens disclosure of this information to disclosure of a healthcare employee's positive COVID-19 test or falling

---

[9] Amazon at one point alludes to the 2021 news coverage of the accident as confirming that the accident was "widely publicized" and therefore that the video of Evans inside the van is merely showing a new perspective on facts that were already public. ECF No. 17 at 6. As addressed *supra* Section 4.1, the Court does not reach the question of whether the 2021 news articles are properly subject to judicial notice, and therefore does not consider those earlier news articles in the offensiveness analysis. Because neither party is disputing that the video is truthful or that it accurately depicts what happened to Evans inside the van during the accident, the Court accepts for purposes of the instant motion that the video is accurate.

down the stairs and breaking an ankle—an "annoyance," perhaps, but not objectively offensive. ECF No. 13 at 5 (citing *Mosley v. Oakwood Lutheran Senior Ministries*, 995 N.W.2d 494 (2023) (Table), *review denied,* 6 N.W.3d 691 and RESTATEMENT (SECOND) OF TORTS § 652D).

Evans disagrees, urging the Court to find that his "reaction to experiencing a traumatic event" is not like disclosure of a positive COVID-19 test. ECF No. 15 at 4–5 (citing *Mosley*, 995 N.W.2d 494, ¶¶ 31–32). While disclosure of a positive COVID-19 test has been found to be unlikely to "expose a person to ridicule," he argues, he has alleged that disclosure of the "close-up" video embarrassed him and "exposed him to public ridicule" and is therefore objectively offensive. *Id.* at 5 (citing *Mosley*, 995 N.W.2d, ¶¶ 31–32; *Pachowitz v. Ledoux*, 666 N.W.2d 88, ¶¶ 5, 27 (Wis. Ct. App. 2003); and *Zinda*, 440 N.W.2d at 550–51, 555). Amazon argues in reply that the *Pachowitz* case Evans cites is inapposite because the state court there "never analyzed the offensiveness of the information disclosed." ECF No. 17 at 6 (citing 666 N.W.2d ¶¶ 16–25). In any event, Amazon says, the inflammatory information disclosed in *Pachowitz*—"a possibly-intentional drug overdose that the plaintiff tried to keep secret from her coworkers"—and *Zinda*—"the plaintiff's alleged fraud and falsification of medical records"—is categorically different than the contents of the video of Evans. *Id.* (citations omitted).

At bottom, Evans is saying that being exposed to ridicule because of the video demonstrates that the video itself was highly offensive, but this argument begs the question. A person may be exposed to ridicule for any number of things posted about them online—people are, unfortunately, unkind to one another on the Internet every day. But being exposed to ridicule about matter posted online does not automatically mean that that

matter is, in substance, highly offensive to a reasonable person (especially where the matter posted is presumably an accurate representation of the event depicted, *see supra* note 9). While the Court accepts Evans's allegation that he was ridiculed and subjected to "humiliation, mental anguish, emotional distress, lost earnings, and stress and injury to his well[-]being" as a result of the video being released, ECF No. 1-1 at 7–8, this allegation does not confirm that the event depicted in the video and the disclosure thereof were highly offensive to a reasonable person.

Further, the Court agrees with Amazon that the accident depicted in the video is unlike the information disclosed in *Pachowitz* and *Zinda*, where invasion of privacy claims were upheld. 666 N.W. ¶ 27 (upholding jury finding "that LeDoux had publicized private medical information concerning Pachowitz"); 440 N.W. at 555 ("[W]e conclude that Zinda established a prima facie claim."). To be sure, the Court does not endorse Amazon's minimization of the accident as having hardly affected Evans because it did not physically injure him and elicited only a "benign" or "innocuous" reaction from him. But Evans's experiencing, and very fortunately surviving without physical injury, a highly improbable accident is different from the purported drug overdose disclosed in *Pachowitz*, 666 N.W. ¶ 12, and the alleged employment misconduct disclosed in *Zinda*, 440 N.W. at 550. Disclosure of such sensitive medical or employment information would be highly offensive to a reasonable person because the information is "private and potentially embarrassing," *Mosley*, 995 N.W.2d ¶ 31 (collecting cases). As discussed *supra* Section 4.1, the Court cannot conclude that the information about Evans recorded in the video was private. Additionally, the disclosure of such information may be considered highly offensive to a reasonable person because it is likely to have negative

Page 16 of 19
Case 2:24-cv-00677-JPS   Filed 12/10/24   Page 16 of 19   Document 18

repercussions (such as dismissal from employment or denial of future employment) or associate the subject with negative stereotypes. Here, Evans has alleged that he was embarrassed and distressed at the video's release, and he has alleged that he "lost wages" because of the video (though he does not explain how), but he has not adequately explained why the embarrassment, distress, and financial repercussions he allegedly experienced were similar to those that a person accused of a drug overdose or employment misconduct might face.

For all these reasons, the Court finds that the allegations in the complaint fail to show that the information disclosed in the video would be highly offensive to a reasonable person of ordinary sensibilities.

### 4.3 Public Interest

The last element of an invasion of privacy claim requires Evans to allege that Amazon "acted either unreasonably or recklessly as to whether there was a legitimate public interest in the [video], or with actual knowledge that none existed." *See* Wis. Stat. § 995.50(2)(am)3. "[W]here a matter of legitimate public interest is concerned, no cause of action for invasion of privacy will lie." *Van Straten v. Milwaukee J. Newspaper-Publisher*, 447 N.W.2d 105, 112 (Wis. Ct. App. 1989) (citing *Newspapers, Inc. v. Breier*, 279 N.W.2d 179, 186 (Wis. 1979)).

Amazon argues that the "significant national and international news coverage about [the] accident in 2021" confirms that the accident was a matter of public interest, therefore it cannot be held to have acted unreasonably or recklessly in releasing the video. ECF No. 13 at 6–7. Evans responds that the fact that there was earlier news coverage of the accident "does not make the video [from inside the van] a matter of legitimate public interest." ECF No. 15 at 5. The parties dispute whether news about the

Page 17 of 19
Case 2:24-cv-00677-JPS    Filed 12/10/24    Page 17 of 19    Document 18

repercussions (such as dismissal from employment or denial of future employment) or associate the subject with negative stereotypes. Here, Evans has alleged that he was embarrassed and distressed at the video's release, and he has alleged that he "lost wages" because of the video (though he does not explain how), but he has not adequately explained why the embarrassment, distress, and financial repercussions he allegedly experienced were similar to those that a person accused of a drug overdose or employment misconduct might face.

For all these reasons, the Court finds that the allegations in the complaint fail to show that the information disclosed in the video would be highly offensive to a reasonable person of ordinary sensibilities.

### 4.3 Public Interest

The last element of an invasion of privacy claim requires Evans to allege that Amazon "acted either unreasonably or recklessly as to whether there was a legitimate public interest in the [video], or with actual knowledge that none existed." *See* Wis. Stat. § 995.50(2)(am)3. "[W]here a matter of legitimate public interest is concerned, no cause of action for invasion of privacy will lie." *Van Straten v. Milwaukee J. Newspaper-Publisher*, 447 N.W.2d 105, 112 (Wis. Ct. App. 1989) (citing *Newspapers, Inc. v. Breier*, 279 N.W.2d 179, 186 (Wis. 1979)).

Amazon argues that the "significant national and international news coverage about [the] accident in 2021" confirms that the accident was a matter of public interest, therefore it cannot be held to have acted unreasonably or recklessly in releasing the video. ECF No. 13 at 6–7. Evans responds that the fact that there was earlier news coverage of the accident "does not make the video [from inside the van] a matter of legitimate public interest." ECF No. 15 at 5. The parties dispute whether news about the

Page 17 of 19
Case 2:24-cv-00677-JPS    Filed 12/10/24    Page 17 of 19    Document 18

accident can be construed as a public controversy for purposes of an invasion of privacy claim. ECF No. 13 at 6–7 (collecting cases); ECF No. 15 at 6.

Because the Court is declining to consider whether the 2021 news coverage of the incident is properly considered on this motion for judgment on the pleadings, Amazon's argument—which depends entirely on the Court acknowledging earlier media coverage of the accident—fails right out of the gate.[10] But because the complaint fails to state a claim on the other two disputed elements of an invasion of privacy claim, the Court need not dig deeper into the parties' arguments here.

5. **CONCLUSION**

For the reasons explained above, Amazon's motion for judgment on the pleadings will be granted. Because the complaint fails to state a claim as a matter of law, granting Evans leave to amend it as he requests, ECF No. 15 at 7, would be futile. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citing Fed. R. Civ. P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182, (1962); and *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009)). Therefore, Evans's invasion of privacy claim and this case will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant Amazon.com, Inc.'s motion for judgment on the pleadings, ECF No. 12, be and the same is hereby **GRANTED**;

---

[10] Amazon may want to seriously reconsider its strategy of relying on information outside the pleadings in a motion challenging the sufficiency of a pleading.

**IT IS FURTHER ORDERED** that Plaintiff Alexander Evans's invasion of privacy claim, ECF No. 1-1, be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of December, 2024.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge